**In re Larry Arthur ANDERSON and Beverly Mae Anderson, Debtors.**

**In re TRIPLE A FEED LOTS, INC., Debtor.**

**Bankruptcy Nos. 91–23592 RJB, 91–23593 RJB.**

United States Bankruptcy Court, D. Colorado.

Feb. 24, 1992.

Kenneth S. Copple and Debra Ann Sweetman, Kenneth S. Copple, P.C., Fort Collins, Colo., for debtors.

Steven R. Rider and Christine J. Law, Rider & Woulf, P.C., Aurora, Colo., for Farm Credit Bank of Wichita.

## MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER comes before the Court on the Debtors' Motion for an Order Authorizing Use of Cash Collateral filed October 28, 1991, and an Objection to Debtors' Motion for an Order Authorizing Use of Cash Collateral and Motion for an Order for Protection of Cash Collateral filed by Farm Credit Bank of Wichita ("FCB") on November 5, 1991. The parties filed a Stipulation of Facts, etc. on December 27, 1991, and have submitted briefs on the issues involved. The parties have agreed that the matter may be decided on the briefs.

Some of the key facts herein are that FCB is an undersecured creditor of the Debtors holding a Promissory Note and Deed of Trust on the Debtors' real proper-

ty. FCB also holds a perfected security interest in the Debtors' machinery, equipment, livestock, crops and accounts receivable. The Debtors filed their Chapter 12 petitions October 11, 1991, after FCB had commenced foreclosure proceedings. On October 18, 1991, FCB filed § 546(b) notices in both cases.

The Debtors operate a commercial feedlot on part (about 15 acres) of the real property whereby they accept cattle from third parties, feed and care for the cattle, and charge the cattle owners a flat rate per head per day ($.20) plus charges by the ton for silage and hay used to feed the cattle. The feedlot also has certain improvements and equipment used in the feedlot operation. The Debtors also raise a certain amount of hay and silage on about 130 acres of the real property, which they use in the feedlot operation. The balance of the real property consists of two residences. One residence is occupied by the individual Debtors. The other residence is rented to a third party. The parties have stipulated that, for purposes of the motions herein, the real property, machinery, equipment, and improvements are not declining in value.

The issues raised herein are: (1) whether the payments received from third parties for the feedlot operation are cash collateral of FCB; (2) whether post-petition crops and proceeds from the sale of said crops are cash collateral of FCB; (3) whether the rent received from the rental of the residences is cash collateral of FCB; and (4) whether, and to what extent, is FCB entitled to adequate protection payments.

### FEEDLOT OPERATION

█ FCB contends that the income generated by the feedlot operation is its cash collateral by reason of its Deed of Trust and § 546(b) notice. The Deed of Trust has the usual and normal "rents, issues and profits" clause. Authority cited for this position includes *In re Colter*, 47 B.R. 1008 (D.Colo.1985); and *In re Morning Star Ranch Resorts*, 64 B.R. 818 (Bankr. Colo.1986). However, this Court views the income generated by the feedlot operation

as more akin to the income generated by hotels and motels for the use of their rooms. *See, In re Vickers, Ltd.*, 111 B.R. 332 (D.Colo.1990). There is now a long line of cases that hold that security interests in hotel and motel revenues are interests in personalty, not realty, and can, therefore, be perfected only under the U.C.C., not under a "rents, issues, and profits" clause in a Deed of Trust. *See*, for example, *In re Investment Hotel Properties, Ltd.*, 109 B.R. 990 (Bankr.Colo.1990); *In re Sacramento Mansion, Ltd.*, 117 B.R. 592 (Bankr. Colo.1990); and *In re Corpus Christi Hotel Partners, Ltd.*, 133 B.R. 850 (Bankr. S.D.Tex.1991). The rationale behind this line of cases is that if the third party from whom the income is derived obtains no interest in the realty in exchange for the payment, but is a mere licensee, then the income is personalty. Such is the situation here. The customers of the feedlot obtain no interest in the realty. They are mere licensees who place their cattle with the Debtors for care and feeding. They have no right of possession to the exclusion of anyone else to any of the real property. Thus, the income received from the operation of the feedlot is not FCB cash collateral under the Deed of Trust, but is more properly classified as accounts receivable.

█ Under § 552(a) the accounts generated by the Debtors post-petition are not subject to FCB's security interest under its U.C.C. filing either. There is an exception to this rule found in § 552(b). That subsection provides that FCB's lien would extend to post-petition accounts if the security agreement specified that the lien would extend to proceeds, product, offspring, rents, or profits of the pre-petition property. In this case the security agreement so provides. However, there is an exception to this exception, and it is an equitable exception, i.e. the lien attaches to post-petition proceeds, etc., *except* to any extent that the court, based on the equities of the case, orders otherwise.

This exception in § 552(b) was intended to cover the situation where raw materials, for example, are converted into inventory, or inventory into accounts, at some expense

to the estate, thus depleting the fund available for general unsecured creditors. *H.R.Rep. No.* 595, 95th Cong. 1st Sess 376–377 (1977) and *S.Rep. No.* 989, 95th Cong.2d Sess 91 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Congress recognized that in transforming, for example, raw materials into inventory, the debtor would be using the secured creditor's collateral (raw materials) but would be adding value to those raw materials at the expense of the general unsecured creditors. Thus, Congress sought to protect the value of the secured creditor's interest in the raw materials, but would not give that secured creditor the benefit of the value added in the transformation to inventory when that value was obtained at the expense of the general unsecured creditors.

In this case, the accounts receivable generated from the feedlot are created from only three sources: (1) the hay and silage raised on the property and fed to the cattle; (2) any feed purchased by the Debtors from third parties and fed to the cattle; and (3) from the labor of the individual Debtors.

The issue of FCB's interest in the hay and silage raised on the Debtors' real property will be discussed *infra*. However, if that particular item is not considered, it is clear that FCB contributes nothing to the generation of post-petition accounts receivable. It would, therefore, be inequitable to allow FCB's lien to extend to these accounts.

### POST–PETITION CROPS AND PROCEEDS THEREFROM

■ As stated *supra*, the Debtors use about 130 acres of the real property to grow hay and silage which they use to feed cattle in their feedlot operation. It is clearly established in this District that the term "rents, issues and profits" includes crops. *See, e.g., In re Layne Farms, Inc., unpub.* Case No. 86 B 03167 E, Bankr.Colo. July 13, 1987. It is also well settled that when a Deed of Trust holder files a § 546(b) notice with the Bankruptcy Court, the creditor perfects its lien in the "rents, issues and profits." *In re Colter, supra.* Thus, the post-petition crops harvested from the

Debtors' real property are subject to FCB's lien under the Deed of Trust, and when these crops are converted into cash, it becomes cash collateral of FCB for which FCB is entitled to adequate protection.

■ The Court must note, however, that there is another creditor of the Debtors that may claim a prior lien in such crops, i.e. the Union Colony Bank. On November 20, 1991, FCB and Union Colony filed a stipulation that provided that Union Colony's lien on all crops planted and harvested pre-petition was superior to the lien of FCB. As a result, when this Court allowed the Debtors to use Union Colony's collateral, i.e. the hay silage, the Debtors stipulated that it would pay Union Colony the market price per ton for the hay and silage as it was used. The Debtors and Union Colony had stipulated as to the market price. The holder of the first and prior lien would be entitled to the adequate protection mandated for the crops planted and harvested post-petition until that lien holder has been paid in full. At this stage of the proceedings, this Court cannot declare whether FCB or Union Colony should receive this adequate protection, however, it can declare that the Debtors can provide adequate protection by paying the market price for the crops as they are consumed in the feedlot operation. If it is not settled by stipulation or until it is finally determined by the Court which entity is entitled to these payments, the Debtors shall deposit their payments into the registry of the Court.

FCB argues that (absent Union colony) the statute mandates that it be paid the reasonable rent customary in the community for the Debtors' use of the farmland. 11 U.S.C. § 1205(b)(3). That statute is *not* mandatory. In fact, the prefatory statement of § 1205(b) states:

In a case under this chapter, when adequate protection is required under Section 362, 363, or 364 of this title, of an interest of an entity in property, such adequate protection *may* [emphasis added] be provided by ... [one of four alternative methods, of which reasonable rent is one].

If farmland secured to a creditor is being used to produce crops, payment of reasonable rent would be but one form of adequate protection. In some cases it may be equitable to simply have the farmer pay over to the creditor all the crops, or the proceeds of the crops. Yet, in other cases, it may be inequitable to order the farmer to pay over his entire crop, the value of which may vastly exceed the reasonable rent for the farmland. And in such cases § 1205(b) would allow the Court to order that only the reasonable rent for the farmland has to be paid over. But § 1205(b)(3) in no way mandates that every time a farmer uses secured farmland he must pay reasonable rent to the creditor. In fact, before any adequate protection payments are ordered, the Court must *first* find that the creditor's interest in the property is in need of protection.

In this case, it is clear that the creditor's lien in post-petition crops is in need of protection because these crops are consumed by the cattle in the feedlot operation. It is that specific interest in the post-petition crops that needs protection. It is *not* FCB's lien on the real property that needs protection. The parties have stipulated that the property is not declining in value. Therefore, the use of the property by the Debtors does not impair or jeopardize FCB's lien or its value, and no adequate protection is needed for FCB's interest therein.

### RESIDENCES

The issue of the proceeds received by the Debtors as rental for one of the residences on the real property is likewise well settled in this District. Upon the filing of its § 546(b) notice, FCB perfected its lien on these rental receipts. *In re Morning Star Ranch Resorts, supra.* However, FCB is not entitled to the gross receipts, but only the net receipts after deduction for maintenance, repairs, and management. The parties have not stipulated as to what these deductions should be, or indeed that the property is actually rented. If the property has been rented to third parties post-petition, the Debtors must provide an accounting to FCB for the rent received.

If the property is not now rented, the Debtors shall either use their best efforts to find a tenant, or FCB shall be entitled to find a tenant, and collect the rent.

There are no proceeds generated by the residence occupied by the individual Debtors. And FCB is no more entitled to receive rent payments from these Debtors than would any secured creditor holding a Deed of Trust on an owner-occupied single family residence. Again, FCB points to § 1205(b)(3) as its authority to demand reasonable rent from the Debtors for this residence. But, as pointed out *supra*, § 1205(b)(3) is not mandatory. That section, by its own plain language, simply *does not require the farmer-debtor to pay reasonable rent for every thing that is secured by the lien of a creditor.* That is what FCB would like this Court to say, but it would be a gross misreading of the statute. Section 1205(b) simply provides some Congressionally approved methods of providing adequate protection to a creditor *after it is determined that adequate protection is mandated.* Here the creditor has stipulated that *all* of its collateral, i.e. the real property, the improvements, the machinery, and the equipment, are not declining in value. Because FCB is undersecured, it is not entitled to accrue interest on its loan. And, under *United States Association of Texas v. Timbers Of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), FCB is not entitled to "lost opportunity costs." What is the nature of FCB's interest that needs protection under these circumstances? Only its lien and the value of its lien. In light of the parties' stipulation that FCB's lien and its value are being maintained, it is not entitled to any additional "adequate protection" except for the post-petition crops consumed in the feedlot operation and for the rent received from third parties for one of the residences. Therefore, § 1205(b) does not even become relevant when considering the other collateral. It is, therefore,

ORDERED that the Debtors may use all of the collateral of FCB subject to the following conditions:

1. The Debtors shall pay over to FCB the market value of any post-petition crops used by the debtors unless there is a dispute between FCB and Union Colony Bank as to which entity has a prior lien on such crops in which event the Debtors shall make such payments into the registry of the Court pending a determination by this Court as to the creditors' relative priorities; and

2. The Debtors shall provide an accounting to FCB for any rents received from the rental of the 2nd residence on the property after October 18, 1991, and shall pay over to FCB the gross proceeds thereof less any necessary expenses including repairs, maintenance, and management costs. If there are disputes as to the net proceeds payable to FCB, the parties shall request a determination from this Court.