Bipin I. PATEL, Ramesh I. Patel, Shivam Corporation, Carolyn Jones and Steven Jones, Plaintiffs,

v.

NORTHFIELD INSURANCE COMPANY, Defendant.

Civil No. 3:95–CV–1828–H.

United States District Court,
N.D. Texas,
Dallas Division.

June 13, 1996.

Tammy Low & Donald R. Black, Dallas, TX, Jerry Hughes, Austin, TX, John Clayman, Miller Dollarhide Dawson & Shaw, Tulsa, OK, for plaintiffs.

Roger Higgins, Kevin Brown, Thompson Coe Cousins & Irons, Dallas, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

Before the Court is Plaintiffs' Motion for Partial Summary Judgment, filed October 6, 1995, and pleadings related thereto; and Defendant's Motion for Summary Judgment,

filed March 21, 1996, and pleadings related thereto.

## I. BACKGROUND

This is a duty to defend insurance case. The lawsuit was originally filed in state court on July 26, 1995. Defendant Northfield Insurance Company ("Northfield") removed the case to the Northern District on August 17, 1995, and the case was assigned to this Court's docket. In an Order dated March 21, 1996, the Court considered Plaintiffs' Motion for Summary Judgment and determined that it must delay ruling in light of Defendant's request for additional discovery. Since the date of that Order, Defendant has filed two Supplemental Responses to Plaintiff's Motion for Summary Judgment.

Plaintiffs filed this action alleging that Defendant Northfield wrongfully failed to defend and indemnify Plaintiffs Bipin I. Patel, Ramesh I. Patel, and Shivam Corporation (collectively referred to as "the Patels") in an underlying lawsuit filed against the Patels by Carolyn and Steven Jones ("the Jones").[1] In the underlying suit the Jones brought claims for damages arising out of an alleged sexual assault committed by unknown persons against Carolyn Jones. *See* Plaintiffs' Second Amended Petition in the underlying suit. The assault occurred while the Jones were guests at the Delux Inn, a motel owned and operated by the Patels. *Id.*

The insurance policy issued to the Patels by Defendant Northfield was a Comprehensive General Liability Commercial Insurance Policy, which insured the Patels' motel business. Northfield initially issued the Patels a commercial insurance policy for a policy period from May 1, 1991 to May 1, 1992. *See* Joint Pretrial Exhibit 1.[2] This policy was renewed for the period May 1, 1992 to May 1, 1993. *See* Exhibit M attached to Defendant's Motion for Summary Judgment.[3] Both in-

surance policies include Coverage A (bodily injury and property damage liability) and Coverage B (personal injury or advertising injury liability).

## II. ANALYSIS

### A. Summary Judgment Standard

In proper circumstances, awarding summary judgment is not disfavored in the federal courts: "summary judgment reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir.1986).

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment or partial judgment as a matter of law. *See* Fed.R.Civ.P. 56. Before a court may grant summary judgment, the moving party must demonstrate that it is entitled to judgment as a matter of law because there is no actual dispute as to an essential element of the non-movant's case. *See Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). The threshold inquiry, therefore, is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Of course, "the substantive law will identify which facts are material." *Id.* at 248, 106 S.Ct. at 2510.

The Supreme Court has explained that a movant for summary judgment need not support the motion with evidence negating the opponent's case; rather, once the movant

---

**1.** Although Plaintiffs have brought various causes of action against Defendant, the allegations all stem from Plaintiffs' contention that Defendant breached its duty to defend and indemnify the Patels in the underlying lawsuit. The underlying lawsuit was filed in the 160th Judicial District of Dallas County and is titled *Carolyn Jones and Steven Jones v. Bipin I. Patel, Ramesh Patel, and Shivam Corporation, d/b/a Delux Inn Market Cen-*

ter, Cause No. 94–7767. Judgment in the underlying case was entered on March 16, 1995. *See* Exhibit H, attached to Defendant's Motion for Summary Judgment.

**2.** The policy number of this policy is CPP70882.

**3.** The policy number of the renewal policy is CPP71642.

establishes that there is an absence of evidence to support the non-movant's case, the burden is on the non-movant to make a showing sufficient to establish each element as to which that party will have the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986).

Once the burden shifts, the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.'* " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (emphasis in original) (*quoting* Rule 56(e)); *see also Fontenot,* 780 F.2d at 1195–98. A party must do more than simply show some "metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355–56. Stated another way, "[i]f the record, taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.,* 948 F.2d 972, 974 (5th Cir.1991) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356). In determining whether a genuine issue exists for trial, all of the evidence must be viewed in the light most favorable to the motion's opponent. *Gremillion v. Gulf Coast Catering Co.,* 904 F.2d 290, 292 (5th Cir.1990). With these summary judgment standards in mind, the Court turns to an analysis of the Motions in this case. The Court first addresses Defendant's Motion for Summary Judgment.[4]

## B. COVERAGE A

The assault on Carolyn Jones which gave rise to the underlying lawsuit occurred on April 5, 1993. Northfield contends that it had no duty to defend the Patels under Coverage A because the 1992–1993 policy contained an assault and battery exclusion. Plaintiffs disagree, contending that the policy that was in effect at the time of the alleged assault and battery did not contain an assault and battery exclusion. Specifically, Plaintiffs argue that they have raised an issue of material fact regarding the intent of the parties in

the formation of the 1992–1993 policy. For the reasons discussed below, the Court disagrees with Plaintiffs' attempts to create a fact issue precluding summary judgment on Northfield's liability under Coverage A.

■ "In interpreting insurance contracts, a court's primary concern is to ascertain and give effect to the intentions of the parties as expressed in the instrument." *Utica Nat. Ins. v. Fidelity Cas. Co.,* 812 S.W.2d 656, 661 (Tex.App.—Dallas 1991, writ denied) (citation omitted). In the absence of ambiguity, the contract alone is generally deemed to express the parties' intentions; objective, not subjective intent controls. *Id.* at 661–62 (citation omitted). The intent of the policy may be evidenced by the stated coverage, the premiums paid for it, and its wording. *Id.* at 662.

■ In this case, the Court must determine whether the assault and battery exclusion was part of the insurance policy. If it was, then Northfield did not owe the Patels a duty to defend or indemnify under Coverage A. *See Audubon Indemnity Co. v. Patel,* 811 F.Supp. 264 (S.D.Tex.1993) (No coverage existed based on assault and battery exclusion in commercial policy issued to motel owner). The legal theory alleged in the underlying petition is not dispositive; where the underlying suit could not have been brought but for the alleged assault and battery, the exclusion applies. *See Burlington Ins. Co. v. Mexican Am. Unity Council,* 905 S.W.2d 359, 363 (Tex.App.—San Antonio 1995, no writ). The Court notes that Plaintiffs do not argue that the assault and battery exclusion is not valid, but rather dispute that the exclusion was part of the insurance policy at issue.

### 1. THE ASSAULT AND BATTERY EXCLUSION WAS PART OF THE POLICY

Plaintiffs contend that the assault and battery exclusion rider was not attached to the 1992–1993 policy. Specifically, in his Affidavit, Bipin Patel states that before he received the 1991–1992 policy, he told his agent, Shirley Holman ("Holman") that he wanted pro-

---

4. The Court notes that Plaintiffs seek summary judgment solely on Coverage B. Defendant seeks summary judgment on both Coverage A and B.

tection for everything, including assault and battery. Affidavit at ¶¶ 3–4. Bipin Patel further states that before he received the 1992–1993 policy, he told Holman that he wanted protection against assault and battery. Plaintiffs argue, based on this Affidavit, that summary judgment cannot be granted to Northfield because the Patels' never intended for the assault and battery exclusion to be included in the 1992 policy. This argument fails for several reasons.

■ First, the Court notes that both the 1991–1992 policy and the 1992–1993 policy referred to Forms and Endorsements. The Forms and Endorsements of both policies refer to the assault and battery exclusion. *See* Defendant's Exhibit M; Joint Pretrial Exhibit 1. Where an insurance policy states that endorsements form part of the policy and reference is made to the endorsement, which was not attached to the policy, the exclusion endorsement is deemed to be included in the policy, provided that the endorsement was issued with the intent that it be part of the policy. *Travelers Indemnity Co. v. Columbus State Bank*, 442 S.W.2d 479 (Tex.App.—Houston [1st Dist.] 1969, no writ); *Sims v. Standard Fire Ins. Co.*, 781 S.W.2d 328, 333 (Tex.App.—Houston [1st Dist.] 1989, writ denied) ("[A]lthough all endorsements agreed to by the contracting parties should be attached to insurance policies, the failure to attach them does not invalidate them."); *Bartley v. National Union Fire Ins. Co.*, 824 F.Supp. 624, 632 (N.D.Tex.1992) (insurance binder incorporated by reference endorsements not attached to the binder).[5]

■ The Court is unpersuaded by Plaintiffs' attempts to prove that incorporation by reference is inapplicable here because of the intent of the parties. Plaintiffs rely on the Affidavit of Bipin Patel to create a factual dispute on the issue of intent of the parties. Under Plaintiffs' reasoning, because Bipin Patel states in his Affidavit that he wanted assault and battery coverage in the 1992–1993 policy, the rider was not incorporated by reference into that policy because the Plaintiffs did not intend for it to be so incorporated.

■ The Court disagrees with Plaintiffs' reasoning. Plaintiffs' attempts to alter the terms of the 1992–1993 policy by his Affidavit violates the parole evidence rule. "When contracting parties have concluded a valid integrated agreement, whether written or oral, dealing with the particular subject matter they have between them, the parole evidence rule prevents the enforcement of *prior or contemporaneous* agreements which are inconsistent with the integrated agreement." *Hallmark v. Port/Cooper–T. Smith Stevedoring Co.*, 907 S.W.2d 586, 590 (Tex. App.—Corpus Christi 1995, no writ). Absent pleading and proof of fraud, accident or mistake in the execution of the agreement, an integrated contract presumes that all prior agreements of the parties relating to the transaction have been merged into the written instrument. *Weinacht v. Phillips Coal Co.*, 673 S.W.2d 677 (Tex.App.—Dallas 1984, no writ).

The Court concludes that Northfield's Commercial Insurance policy is an integrated agreement because the contract contains an integration clause. Specifically, in the Section titled "Common Policy Conditions," under the Section titled "Changes," the policy states that "[t]his policy contains all the agreements between you [the insured] and us [the insurer] concerning the insurance afforded.... This policy's terms can be amended or waived only by endorsement issued by us and made part of this policy." *See* Defendant's Exhibit M. *Accord Smith v. Smith*, 794 S.W.2d 823 (Tex.App.—Dallas, 1990, no writ) (Parole evidence rule is particularly applicable where the written contract contains a recital that it contains the entire agreement between the parties or a similarly worded merger provision.). Because the Northfield policy constitutes an integrated contract, the Court refuses to alter its terms by relying on Bipin Patel's Affidavit.

Additionally, the Court is of the opinion that the facts referred to in Bipin Patel's Affidavit constitute preliminary negotiations which should not displace the written terms of the Northfield insurance contract. *See*

---

**5.** The Court notes that the 1992–1993 Northfield policy insurance binder specifically states that the assault and battery exclusion is part of that policy. Holman's Affidavit at ¶ 2.

*Fisher Controls Intern, Inc. v. Gibbons,* 911 S.W.2d 135, 142–143 (Tex.App.—Houston [1st Dist.] 1995, application for writ of error filed January 29, 1996); *See also* Restatement (Second) of Contracts § 26 (1981). In addition, Bipin Patel's deposition testimony on this issue indicates that his discussions with Holman constituted preliminary negotiations. *See* Bipin Patel's Deposition at 64–66. Because the Patel's alleged desire to be covered for assault and battery was only expressed during preliminary negotiations, such references cannot invalidate the terms of the contract which included the assault and battery exclusion.

■ Further, despite Plaintiffs' arguments to the contrary, the Court is persuaded that the 1992–1993 policy was a renewal policy. Plaintiffs themselves have labeled it as such. *See* Plaintiffs' First Amended Petition at 1–2. It is undisputed that the 1991–1992 policy contained an assault and battery exclusion. In fact, in their Response to Defendant's Motion for Summary Judgment, Plaintiffs specifically state that "Plaintiffs acknowledge that the 1991 policy contained the rider. Had the incident occurred during the 1991 policy period, as written with the rider attached, the duty to defend would not have existed." Plaintiffs' Response at 11. In the absence of an *agreement* to the contrary, the presumption is that renewals are on the same terms, conditions, and amounts as provided in the original policy. *Liverpool & London & Globe Insur. Co. v. Swann,* 382

S.W.2d 521 (Tex.App.—Beaumont 1964, no writ) (citation and internal quotations omitted) (emphasis added).

■ Plaintiffs argue that they did not agree to renew the 1991 policy on the same terms.[6] Plaintiffs' contention confuses two distinct scenarios: agreement between the parties on the one hand, and a unilateral changing of contractual terms on the other. *See Continental Cas. Co. v. Allen,* 710 F.Supp. 1088, 1094–95 (N.D.Tex.1989) (Court rejected plaintiff's argument that the policy was a renewal policy with different terms because there was no mutual assent to change the terms but rather a unilateral changing of the terms). There is simply no summary judgment evidence demonstrating an *agreement* between the parties to modify the terms of the 1991–1992 contract.[7]

The Court finds that there is no assault and battery protection in the 1992–1993 policy for an additional reason as well. As noted previously, Plaintiffs do not dispute that the 1991–1992 policy contained an assault and battery exclusion. Plaintiffs argue, however, that the 1992–1993 policy provided this coverage. In essence, then, Plaintiffs argue that the 1992–1993 policy provided for more coverage than did the 1991–1992 policy. This argument does not stand up to the facts of this case. The 1991–1992 policy premium was $11,915.00. *See* Joint Pretrial Exhibit 1. The 1992–1993 policy premium was $11,429.00. *See* Defendant's Exhibit M. Thus, Plaintiffs argue that they paid $486.00 dollars

---

6. *See* Plaintiffs' Response at 9.

7. The Court is similarly unpersuaded by Plaintiffs' vague argument concerning unilateral mistake. Plaintiffs argue that Defendant made a unilateral mistake by assuming that Plaintiffs did not want assault and battery coverage. *See* Plaintiffs' Response at 9, 10. The Court does not understand why Plaintiffs refer to *Defendant's* alleged mistake, rather than their own. In any event, the doctrine does not apply here. *See Robles v. NME Hospitals,* 1994 WL 679315 (Tex. App.—Dallas 1994, no writ) (To establish the existence of a unilateral mistake, a party must show 1) the mistake was of so a great consequence that to enforce the contract as made would be unconscionable; 2) the mistake relates to a material feature of the contract; 3) the mistake was made in spite of the exercise of reasonable care; and 4) the parties can be placed

in status quo in the equity sense, i.e. recision must not result in prejudice to the other party except for the loss of his bargain) (citations omitted).

At the very least, the Court is of the opinion that the third factor listed above was not met in this case: Bipin Patel readily admits that he did not read either the 1991–1992 policy or the 1992–1993 policy. *See* Affidavit of Bipin Patel at ¶¶ 6, 8. "A contract may not be avoided on the ground of mistake of fact where it appears that ignorance of the facts was the result of carelessness, indifference, or inattention." *Roland v. McCullough,* 561 S.W.2d 207, 212 (Tex.App.—San Antonio, 1978, writ ref. n.r.e.). Had Bipin Patel read the policies at issue, he would have noted that assault and battery was excluded from coverage. One is presumed to have read a contract that one signs. *See Cajun Electric Power Cooperative v. Riley Stoker Corp.,* 791 F.2d 353, 359 (5th Cir.1986).

*less* for *more* coverage. Plaintiffs' argument makes no economic sense. *Cf. Matsushita Electric,* 475 U.S. at 587–590, 106 S.Ct. at 1356–58.

For the reasons stated above, the Court concludes that the assault and battery exclusion formed a part of the 1992–1993 insurance policy.[8] Accordingly, there is no duty to defend under Coverage A.[9] Because there is no duty to defend under Coverage A, it necessarily follows that there is no duty to indemnify under Coverage A. *See Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.,* 1 F.3d 365, 369 (5th Cir.1993) (The duty to defend is broader than the duty to indemnify).

## C. COVERAGE B

Defendant also contends—and the Court agrees—that there is no duty to defend under Coverage B. Coverage B, the "personal injury" coverage of the Northfield policy provides coverage for "personal" or "advertising injury". *See* Defendant's Exhibit M. Under Coverage B, personal injury means injury, other than bodily injury, arising from various offenses. The provisions relevant to this case concern "the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor." *See* Defendant's Exhibit M, section V(c).

■ Initially, the Court notes that the policy provision at issue is not ambiguous. *Accord Decorative Center v. Employers Cas.,* 833 S.W.2d 257, 260 (Tex.App.—Corpus Christi, 1992, writ denied) (holding that provision providing for "other invasion of the right of private occupancy" was not ambiguous).[10] The Court disagrees with Plaintiffs' reliance on *Beltway Management Co. v. Lexington—Landmark Ins.,* 746 F.Supp. 1145 (D.C.1990). In *Beltway,* the court stated that the phrase "other invasion of the right of private occupancy is ambiguous." 746 F.Supp. at 1150. Because Texas law supplies the rule of decision in this case (*see Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)), the Court agrees with the *Decorative Center* court that the phrase is not ambiguous.[11]

■ Next, the Court considers whether any of the above-enumerated offenses were at issue in the underlying case.[12] The

8. Because the Court concludes that the assault and battery exclusion formed a part of the 1992–1993 policy, the Court finds it unnecessary to address Defendant's contention that is entitled to reformation.

9. The Court is unpersuaded by Plaintiffs' tenuous argument that Defendant is "estopped to assert the unattached rider to deny coverage." *See* Plaintiffs' Response at 11. "Estoppel is a doctrine to prevent injustice." *Donaldson v. Lake Vista Community Improvement Assoc.,* 718 S.W.2d 815, 817 (Tex.App.—Corpus Christi, 1986, writ ref. n.r.e.) (citation omitted). "One by speech or conduct induces another to act in a particular manner should not be permitted to adopt an inconsistent position, attitude, or course of conduct which causes loss or injury to another." *Id.* at 818 (citation omitted). There is no indication whatsoever that Defendant ever took the position that the rider was not attached to the 1992–1993 policy.

10. The Court is unpersuaded by Plaintiffs' suggestion that the provision at issue is ambiguous. Plaintiffs argue that the policy language in the *Decorative Center* case is different from the policy language in Northfield's policy. The Court disagrees, finding the slight difference in the wording of the two policies has no practical effect.

The Northfield policy states, in relevant part, that personal injury arises from

> The wrongful eviction from, wrongful entry into, or the invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord, or lessor.

The *Decorative Center* policy language provides for personal injury coverage for

> Wrongful entry or eviction, or other invasion of the right of private occupancy.

833 S.W.2d at 259. The Northfield policy is unambiguous.

11. To the extent that Plaintiffs rely on *Beltway* to support the argument that there is a duty to defend under Coverage B based on alleged violation of the implied warranty of habitability, the Court notes that the implied warranty of habitability has been abrogated in Texas. *See Cannon v. Lemon,* 843 S.W.2d 178, 182 n. 2 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

12. Because the Court is of the opinion that none of the enumerated offenses in Coverage B of the Northfield policy were implicated in the underlying lawsuit, the Court does not find it necessary to address Defendant's argument that there is no coverage under the Northfield policy unless the

**1002**

Court is of the opinion that the underlying suit fails to allege a cause of action for wrongful eviction. Plaintiffs concede that wrongful eviction is not implicated in this case. *See* Plaintiffs' Response at 16 ("Plaintiffs have never maintained that an 'eviction' occurred."). In any event, the Court notes that there is no duty to defend for wrongful eviction. Eviction occurs when a person claiming a superior title to property dispossesses a tenant of that property. *See Luettich v. Putnum,* 287 S.W.2d 727, 732 (Tex. App.—El Paso 1956, writ ref'd n.r.e.) (Eviction means the establishment or assertion against the tenant of a title paramount to that of the landlord.). Under Texas law, hotel guests are licensees, not tenants. *In re Corpus Christi Hotel Partners, Ltd.,* 133 B.R. 850, 855 (Bankr.S.D.Tex.1991). Because the Jones were merely licensees there is no claim for wrongful eviction.

■ The Court is similarly of the opinion that the underlying suit did not allege wrongful entry and that there is no duty to defend on that ground. "A wrongful entry takes place when someone other than the landlord claims a possessory interest in the room dwelling, or premises." *W.H. Breshears, Inc. v. Federated Mut. Ins. Co.,* 832 F.Supp. 288 (E.D.Cal.1993), *aff'd in part, rev'd in part on other grounds,* 38 F.3d 1219 (9th Cir.1994). The offense of wrongful entry involves a claim by one person over another to the occupancy of a room. *Id.* at 290. The underlying lawsuit does not implicate wrongful entry, and the Court concludes that there is no duty to defend on that ground.[13]

■ The only remaining possible offense that could implicate a duty to defend under Coverage B is for "invasion of a right of private occupancy." As to that offense, the Court also concludes that there is no duty to defend. Although the parties devote a great deal of attention to this offense, the Court is of the opinion that the law on this issue is relatively clear. Under Texas law, as noted above, a guest in a hotel is a mere licensee, not a tenant. *See Corpus Christi*

*Hotel,* 133 B.R. at 854. A guest in a hotel acquires no interest in the realty. *Id.* (citation omitted). "The phrase 'other invasion of the right of private occupancy' provides coverage only if there exists a landlord-tenant relationship, or if the plaintiff has a vested property right." *Decorative Center,* 833 S.W.2d at 262 (*quoting Martin v. Brunzelle v. State Farm Fire & Cas. Co.,* 699 F.Supp. 167 (N.D.Ill.1988)).

■ In the instant case, there is clearly no landlord-tenant relationship between the Jones and the Patels. Because Texas law holds that hotel guests do not have a vested property right (*see Corpus Christi Hotel,* 133 B.R. at 854), the Jones do not have a vested property right in the Patels motel room. Without a landlord-tenant relationship or vested property right, there is no duty to defend for an "invasion of the right of private occupancy." *Accord Decorative Center,* 833 S.W.2d at 262–63. As was the case in *Decorative Center,* in this case there was no interference with the rights of private occupancy, but rather, interference with the right to *use and enjoy* the property. *Id.* at 263. The latter does not fall within Coverage B. *Id.* There is no duty to defend under Coverage B. Because there is no duty to defend, there is no duty to indemnify. *See Gulf Chem.,* 1 F.3d at 369.

### III. CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment is **GRANTED.** Plaintiffs' Motion for Partial Summary Judgment is **DENIED.** This case is **DISMISSED.** Judgment will be entered accordingly.

SO ORDERED.

---

*insured* commits the offense. *See* Defendant's Motion at 14–15; Plaintiffs' Response at 13–16; Defendant's Reply at 7–8.

**13.** The Court notes that Plaintiffs have not addressed this offense in their Response.