MID–CONTINENT CASUALTY
COMPANY Plaintiff,

v.

CAMALEY ENERGY COMPANY, INC.
Rodessa Operating Company, Inc.,
Kenneth Tally, Kendall # 1 Joint Ven-
ture, Basin Oil & Gas, L.L.C, Defen-
dants

No. 7:03–CV–129–R.

United States District Court,
N.D. Texas,
Wichita Falls Division.

March 31, 2005.

Marie K. Miller, Miller & Burke, San Antonio, TX, for Plaintiff.

Robert K. Wise, Maurice Owens, Jr., Hunton & Williams, David P. Poole, Dallas, TX, for Defendants.

### *MEMORANDUM OPINION*

BUCHMEYER, Senior Judge.

Before the Court is Plaintiff Mid–Continent Casualty Company's Motion for Summary Judgment, filed July 28, 2004. For the reasons detailed below, Plaintiff's Motion is **GRANTED**.

### *Introduction*

This is a declaratory judgment action. Plaintiff Mid–Continent Casualty Company ("Mid–Continent") seeks a determination that it does not have a duty to defend or indemnify Camaley Energy Company, Inc., Rodessa Operating Company, Inc., or Kenneth Tally (hereinafter "Camaley, Rodessa, and Tally") in an underlying lawsuit. This lawsuit is identified as *Kendall # 1 Joint Venture, et al. vs. Camaley Energy Company, Inc. d/b/a/ Rodessa Operating Company, et al.,* pending under Cause No. 4158 in the 50th Judicial District Court of Cottle County, Texas (hereinafter "the underlying lawsuit" or "the *Kendall* lawsuit").

Mid–Continent further seeks a determination that the plaintiffs in the underlying lawsuit, Kendall # 1 Joint Venture, Basin

Oil & Gas, L.L.C., and Carl Ratner (hereinafter "the *Kendall* plaintiffs"), cannot recover under the Mid–Continent policy as third-party beneficiaries and/or judgment creditor. Specifically, Mid–Continent argues that the *Kendall* plaintiffs could not recover as judgment creditors because they step into the shoes of the insureds.

### Factual Background

Mid–Continent issued to Defendants, Camaley Energy Company, Inc. and Rodessa Operating Company, Inc., a Commercial General Liability Policy, by which Mid–Continent undertook, in Coverage "A", to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'... only if ... [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence." [1] Coverage "B" provides that Mid–Continent will "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." [2]

Camaley, Rodessa, and Tally were sued in Texas state court by the *Kendall* plaintiffs. The *Kendall* petition alleges, in relevant part:

On or about February of 2000, Plaintiff Kendall and one or more of Defendants entered into an oral contract whereby one or more of Defendants were responsible for all aspects of the drilling, completing, producing and operating of the Worley# 1 Well, Hackberry Field, Cottle County, Texas ("well") in section 2 block K of R.M. Thompson Survey ... Defendant Tally was never present on location during spuding, drilling or any other activities relating to the Worley# 1. Defendants knew or should have known of the numerous difficulties and problems common in the area with regard to deviation from the plotted well bore. During the drilling of the well,

Defendants, individually, collectively, and/or by and through their agents representatives, employees, and/or contractors failed to properly and adequately evaluate the location of the well bore being drilled and as a result crossed over the lease line and was in fact not on the property represented by the leasehold. Through lack of diligence, Defendants, individually, collectively, and/or by and through their agents, representatives, employees, and/or contractors failed to engage, employ the proper tooling to the [*sic*] prevent the deviation and trespass into the neighboring leasehold which resulted in the constructive eviction of Plaintiff Kendall from its leasehold and use of enjoyment of the same. The acts of Defendants, individually, collectively, and/or by and through their agents, representatives, employees, and/or contractors, resulted in property damages and consequential damages following therefrom. [3]

Camaley, Rodessa, and Tally requested a defense and indemnification from Mid–Continent for the claims being made against them in the *Kendall* lawsuit. Mid–Continent is currently providing a defense to Camaley, Rodessa, and Tally under a reservation of rights. However, Mid–Continent argues under several points, that they have no duty to defend or indemnify Camaley, Rodessa, and Tally in the *Kendall* lawsuit. The arguments are considered in turn.

### Analysis

#### A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only when the movant demonstrates that there is no genuine issue as to any material fact, and the party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,*

1. J.A., Ex. B, at 11, 13.

2. J.A., Ex. B, at 15.

3. J.A., Ex A, at 4.

477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548.

Once the movant has discharged its initial burden under Rule 56, the nonmovant must set forth specific facts, by affidavits or otherwise, showing there is a genuine issue for trial. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In weighing the evidence, the court must decide all reasonable doubts and inferences in the light most favorable to the nonmovant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir.1988). As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247, 106 S.Ct. 2505.

### B. The Duty to Defend

█ An insurer's duty to defend is separate and distinct from the duty to indemnify. *Farmers Texas County Mut. Ins. v. Griffin*, 955 S.W.2d 81, 82 (Tex.1997). There can be no duty to indemnify if there

is no duty to defend.[4] *See Western Heritage Ins. Co. v. River Entertainment*, 998 F.2d 311, 315 (5th Cir.1993). Therefore, whether Mid–Continent has a duty to defend Camaley, Rodessa, and Tally in the *Kendall* lawsuit must be decided before reaching the question of indemnity.

█ The Fifth Circuit has described an insurer's duty to defend as "expansive." *See Snug Harbor, Ltd. v. Zurich Ins.*, 968 F.2d 538, 545 (5th Cir.1992). "If any allegation in the complaint is even *potentially* covered by the policy then the insurer has a duty to defend the insured." *Enserch Corp. v. Shand Morahan & Co.*, 952 F.2d 1485, 1492 (5th Cir.1992) (emphasis added). However expansive, the duty to defend is not limitless. *Id.* "The insurer is under a legal duty to defend if, and only if, the petition alleges *facts* construing a cause of action within the coverage of the policy." *Maryland Cas. v. Mitchell*, 322 F.2d 37, 39 (5th Cir.1963) (emphasis added) (footnote omitted); *see also King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex.2002) ("An insurer's duty to defend is determined solely by the allegations in the pleadings and the language in the insurance policy."); *see also Griffin*, 955 S.W.2d at 82 ("A court must focus on the factual allegations rather than the legal theories asserted in reviewing the underlying petition."). Furthermore, all doubts regarding an insurer's duty to defend are resolved in favor of the insured. *King*, 85 S.W.3d at 187.

### C. Coverage "A," Bodily Injury and Property Damage

Mid–Continent alleges that there is no coverage for the claims asserted in the *Kendall* lawsuit under Coverage A for the

---

4. However, "an insurer may have a duty to defend but, eventually, no duty to indemnify." *Griffin*, 955 S.W.2d at 82. Even after determining that a duty to defend exists, "[i]t may sometimes be necessary to defer resolution of indemnity issues until the liability litigation is resolved." *Id.* The Texas Supreme Court has further held that "the duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." Id.*

following reasons: (a) the facts in the underlying lawsuit do not allege an "occurrence" as required for coverage under the policy; (b) the facts in the underlying lawsuit do not allege claims for covered "property damage" as required for coverage under the policy; and (c) exclusions j.(5), l, and m apply to preclude coverage. Camaley, Rodessa and Talley dispute these claims and allege that Coverage A provides coverage for the claims asserted in the *Kendall* lawsuit. The allegations are considered in turn.

### 1. Whether the Kendall lawsuit alleges an "occurrence."

The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [5] Mid–Continent argues that the allegations in the *Kendall* lawsuit do not allege an "occurrence" as required by the policy because the well bore deviation was the natural, anticipated, and expected result of Camaley, Rodessa and Talley's conduct. Furthermore, Mid–Continent argues that Camaley, Rodessa and Talley's well bore deviation was the result of intentional conduct, thus barred from coverage "even if caused by mistake or error." Camaley, Rodessa and Talley argue that the *Kendall* lawsuit does in fact allege an "occurrence" as required by the policy because the well bore deviation was accidental. They argue that the *Kendall* lawsuit does not allege that the well bore's deviation was the 'result "the natural result" of "voluntary and intentional" conduct.

■ The seminal case on the subject of what constitutes an "occurrence" is *Argonaut Southwest Insurance Company v. Maupin,* 500 S.W.2d 633 (Tex.1973). In *Maupin,* the insured removed dirt from property pursuant to an agreement with an individual that the insured mistakenly believed was the property owner. The true owner then sued the insured for trespass. The Texas Supreme Court held that the insured's removal of dirt was neither an "accident" nor an "occurrence" as defined by the insurance policy, which contained the same definition as the policy at issue in this case, because the insured's "acts were voluntary and intentional, even though the result or injury may have been unexpected, unforeseen and unintended." *Id.* at 635. The reasoning in *Maupin* was that the insured was mistaken and in error. The acts were not accidents because they were done deliberately, though under a mistaken belief as to the true owner of the property. Here, the insureds are being sued for negligence and trespass based on their well bore's "deviation." [6] Unlike the insured in *Maupin,* the insureds in this case are not being accused of conduct that was the result of a mistaken belief. Allegedly, Camaley, Rodessa and Talley lost control of their well bore. Nothing in the *Kendall* petition alleges that Camaley, Rodessa and Talley intentionally and deliberately entered the Kendall property mistakenly, erroneously, or under any flawed belief that they had the legal right to do so. The facts alleged in the *Kendall* petition allege an accidental deviation. Therefore, the underlying suit alleges an occurrence.

### 2. Whether the facts in the underlying lawsuit allege claims for covered "property damage."

The policy at issue states that Mid–Continent "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." [7] The policy defines "property

---

5. J.A., Ex. B., at 22.

6. J.A., Ex. A, at 4.

7. J.A., Ex. B, at 11.

damage" as "physical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of tangible property that is not physically injured." [8]

Mid–Continent argues that the *Kendall* petition does not allege any property damage covered by the policy. Specifically, Mid–Continent argues that despite the *Kendall* Plaintiffs' use of the term "property damage" in their petition, there are no factual allegations to support claims for actual damage to or loss of tangible property. Camaley, Rodessa and Talley argue that *Kendall* petition alleges property damage covered by the policy, and specifically cite the portion of the petition which states:

> Through lack of diligence, Defendants, individually, collectively, and/or by and through their agents, representatives, employees, and/or contractors failed to engage, employ the proper tooling to the [*sic*] prevent the deviation and trespass into the neighboring leasehold which resulted in the constructive eviction of Plaintiff Kendall from its leasehold and use of enjoyment of the same. [9]

The injury alleged in the *Kendall* petition clearly does not allege physical injury to tangible property. Camaley, Rodessa, and Tally allege that the petition alleges covered property damage under the "loss of use" definition prong.

Mid–Continent first argues that the losses claimed by the *Kendall* plaintiffs are purely economic damages, not property damages. Mid–Continent cites *Lay v. Aetna Ins. Co.*, 599 S.W.2d 684 (Tex.Civ. App.—Austin 1980, writ ref'd n.r.e.) for this proposition. In *Lay,* the appellant was hired by a leaseholder to locate a site

for a well and to supervise its drilling. After it was discovered that appellant erred in choosing a drilling site he was sued by the leaseholder for losses incurred as a result of the negligent location of the well on the wrong lease. In that case the Court of Civil Appeals of Texas, Austin construed a property damage clause nearly identical to the issue to exclude the following damages: (1) $15,750 for purchase of an assignment of the portion of the lease upon which the well was drilled; (2) $1,640.56 for attorney and surveyor fees; and (3) $16,644 for the loss of approximately 1500 barrels of oil to adjacent wells caused by delay in getting the well into production. *Id.* at 686. The Court in *Lay* reasoned that "[t]he purchase of the assignment was an *economic* transaction involving the exchange of money for the privilege of drilling and producing oil." *Id.* (emphasis added). The Court further reasoned that "the attorney and surveyor fees were merely *expenses* necessarily incurred in the process of negotiating and acquiring the lease ..." *Id.* (emphasis added). And as to the $16,644 for the loss of 1500 barrels of oil, the Court reasoned that leaseholder did not have a property right in the oil because the leaseholder was "a mere subsequent purchaser [and could not] recover for an injury committed before his purchase." *Id.*

The damages sought in the *Kendall* lawsuit are distinguishable from those awarded in *Lay.* [10] The *Kendall* plaintiffs are alleging that they were constructively "evicted" from their leasehold. Unlike the damages sought in *Lay,* the *Kendall* petition does not allege economic losses, expenses, or expected profits (such as lost oil

---

8. *Id.* at 23.

9. J.A., Ex. A., at 4.

10. Notably, *Lay* is not a declaratory action. *Lay* involves an *indemnification* issue follow-

ing a judgment levied against an insured. Therefore, the vantage point from which the Court considers the damages sought is different. The Court in this case must look only on the face of the pleadings to ascertain a duty to defend.

revenues). The *Kendall* petition alleges that Camaley, Rodessa, and Tally's conduct caused "constructive eviction of Plaintiff Kendall from its leasehold and use of enjoyment of the same."[11] The damages are later characterized as "property damages and consequential damages following therefrom."[12] On its face, these damages appear to be covered "loss of use of tangible property" and not purely economic damages.

■ Mid–Continent, however, argues that a lease is not tangible property that is capable of being handled or touched. Camaley, Rodessa, and Tally have presented authority holding that tangible property includes real property, and that an oil and gas lease is an interest in real property. *See Wheeler v. Box*, 671 S.W.2d 75, 77 (Tex.App.—Dallas 1984, no writ) ("Tangible property includes both real and personal property."); *see also Mitchell Energy Corp. v. Samson Resources Co.*, 80 F.3d 976, 982 (5th Cir.1996) ("In Texas, an oil and gas lease conveys an estate in real property to the lessee ...."). Without citing authority, Mid–Continent argues that a lease is an interest in real property, but is not tangible property. Under Mid–Continent's analysis, if the *Kendall* plaintiffs were owners, and not lessees, their petition would properly allege property damage. "Loss of use of property damage" cannot be read so narrowly to exclude *leased* real estate. Therefore, the *Kendall* petition alleges "property damage" as a matter of law.

### 3. Whether policy exclusions apply

The policy at issue also contains exclusions, described by Mid–Continent as "business risk" exclusions. The exclusions at issue are:

j(5). [This insurance does not apply to] "Property damage" to ... [t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations ...

1. Damage to Your Work: "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. Damage To Impaired Property or Property Not Physically Injured: "Property damage" to "impaired property" or property that has not been physically injured, arising out of: (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms. This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.[13]

Camaley, Rodessa and Tally have shown that *Kendall* lawsuit claims are potentially within the policy's scope of coverage. Now the burden shifts to Mid–Continent to prove that the policy's exclusions apply. *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir.2001). If Mid–Continent is successful, the burden shifts back to Camaley, Rodessa and Tally to show that an exception to the exclusion

11. J. A., Ex. B., at 4.

12. *Id.*

13. J.A., Ex. B., at 14.

applies. *Id.* The exclusions are considered in turn.

#### a. Exclusion "j(5)"

Mid–Continent argues that because the *Kendall* plaintiffs are alleging that Camaley, Rodessa and Tally were performing operations in drilling a well on real property when the deviation occurred, "j(5)" excludes those resulting damages. The Court of Civil Appeals in *Houston Building Service, Inc. v. American General Fire and Casualty,* 799 S.W.2d 308 (Tex. Civ.App.—Houston [1st Dist.] 1990, writ denied) considered a similar policy exclusion [14] when determining whether a janitorial service's negligent application of linseed oil to a client's floor was covered by the service's insurance policy. The court held that exclusion applied, and held that the insurer was not liable. *Id.* at 311.

■ Here, the negligence of Camaley, Rodessa and Tally while drilling on the *Kendall* plaintiff's lease caused the alleged property damage. Therefore, these damages appear to fall squarely within exclusion "j(5)". Camaley, Rodessa and Tally argue that because the *Kendall* petition alleges damages to the neighboring property as well, "j(5)" is inapplicable. However, damage to neighboring property is irrelevant to coverage dispute at issue. Camaley, Rodessa and Tally are being sued by the *Kendall* leaseholders for property damage inflicted on the *Kendall* lease, not the neighboring property. If Camaley, Rodessa and Tally were being sued by the owners of the neighboring property for property damage, "j(5)" would be inapplicable. But here, the lawsuit is being brought by very people who hired Camaley, Rodessa and Tally for damage to the property they were hired to work on. Therefore, Camaley, Rodessa and Tally's negligent conduct is excluded from coverage.

#### b. Exclusion "l"

■ Mid–Continent briefly argues that exclusion "l" precludes coverage because the "work" of Camaley, Rodessa and Tally (the drilling of the well) caused the property damage to the *Kendall* plaintiffs. But Camaley, Rodessa and Tally point out that the pleadings are vague as to whether Camaley, Rodessa, Tally or subcontractors actually did the "work." Because the exclusion does not apply to work performed by subcontractors, exclusion "l" is inapplicable. Although the *Kendall* petition is vague as to identifying whether subcontractors caused the damage, it must be read liberally in favor of the insured. *See Malone v. Scottsdale Ins. Co.,* 147 F.Supp.2d 623, 629 n. 6 (S.D.Tex.2001) (" [T]he ... Petition alleges that Malone hired several subcontractors ... The Petition does not distinguish between work done by Malone and that done by subcontractors."). Therefore, exclusion "l" does not apply in this case.

#### c. Exclusion "m"

■ Mid–Continent argues that exclusion "m" applies because Camaley, Rodes-

---

14. The policy exclusion at issue in *American General* reads "This insurance does not apply to.'[p]roperty damage' to ... [t]hat particular part of real property on which you ... are performing operations, if the 'property damage' arises out of those operations." *Id.* at 311. By contract, the policy exclusion in *Travelers Ins. Co. v. Volentine,* 578 S.W.2d 501, 503 (Tex.Civ.App.—Texarkana 1979, no writ), cited by Defendants, reads "This insur-

ance does not apply ... to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith ..." The exclusion at issue clearly resembles the one at issue in *American General*, and is clearly distinguishable from the one at issue in *Volentine*.

ṣa and Tally's negligence caused the *Kendall* parties to lose their leasehold, and that amounts to a breach of contract. Camaley, Rodessa and Tally argue that the exclusion does not apply because the damages claimed in the *Kendall* petition do not fall within the definition of "impaired property." However, exclusion "m" applies to *both* "impaired property" or "property that has not been physically injured," such as the leasehold at issue here. Because the damage alleged in the *Kendall* petition was caused by Camaley, Rodessa and Tally's negligent drilling, the conduct falls under exclusion "m" because such conduct constitutes a defect, deficiency, inadequacy, dangerous condition in their work. In the alternative, the bore deviation constitutes Camaley, Rodessa and Tally's failure to perform their work for the *Kendall* plaintiffs in accordance with their contract. Therefore, exclusion "m" applies.

### D. Coverage "B," Personal and Advertising Injury Liability

■ Coverage "B" "applies to 'personal and advertising injury' caused by an offense arising out of your business . . ."[15] "Personal and advertising injury" is defined in the policy to include, in relevant part, "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor."[16] Mid–Continent cites *Decorative Center of Houston v. Employers Cas. Co.*, 833 S.W.2d 257, 261 (Tex.App.—Corpus Christi 1992, writ denied) and *Patel v. Northfield Ins. Co.*, 940 F.Supp. 995, 1001 (N.D.Tex.1996) as authority holding that personal injury coverage in Coverage "B" applies only to landlord-tenant situations

and the like. Camaley, Rodessa and Tally argue that because the underlying lawsuit alleges that the *Kendall* plaintiffs were evicted from their leasehold, Coverage "B" applies. The plain language of the policy and the holdings of *Decorative Center* and *Patel* clearly do not cover the injury alleged by the *Kendall* plaintiffs in their lawsuit against Defendants. The *Kendall* petition does not allege wrongful eviction, wrongful entry, or invasion of private occupancy. The *Kendall* petition only alleges that Defendant's conduct caused a "constructive eviction."[17] Although this can be construed as loss of use of property under Coverage "A", it cannot be construed as the type of personal injury under Coverage "B". Therefore, there is no coverage under Coverage "B."

### E. Coverage Under the Oil and Gas Endorsement

■ The policy also provides an "Oil and Gas Endorsement" which provides, in relevant part, coverage for "property damage" to:

> Oil, gas, water or other mineral substances which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water; or . . . any formation strata or area in or through which exploration for or production of any substance is carried on.[18]

The Defendants argue that the allegations in the *Kendall* petition fall under this endorsement because it "implicitly alleges that the well bore made unauthorized physical contact with the minerals on the neighboring property, by accident."[19] Whether or not the well bore made contact

---

**15.** J.A., Ex. B., at 15.

**16.** *Id.* at 22.

**17.** J.A., Ex. A., at 4, 5.

**18.** J.A., Ex. B., at 26.

**19.** Def.'s Resp., at 17.

with the property neighboring the *Kendall* lease is irrelevant Mid–Continent's duty to defend is based on the allegations in *Kendall* petition which allege damage to the *Kendall* leasehold. At this stage of the litigation, any damages that may or may not be claimed by the neighboring property owners are irrelevant. Nothing in the *Kendall* petition alleges damage to minerals or strata. Therefore, the Oil and Gas Endorsement is unavailing.

### *Conclusion*

Policy exclusions "j(5)" and "m" apply to preclude coverage under Coverage A, and the *Kendall* petition does not allege damages covered by Coverage B or the Oil and Gas Endorsement. Therefore, Mid–Continent is entitled to summary judgment on their request for declaratory judgment. Finally, absent coverage the Court holds that Mid–Continent has no duty to defend or indemnify Camaley, Rodessa, or Tally as a matter of law. Accordingly, Mid–Continent need not pay any damages awarded to the *Kendall* plaintiffs in the underlying lawsuit. An appropriate final judgment consistent herewith shall be issued.

It is so **ORDERED.**