# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 29, 2012

No. 12-40189

Lyle W. Cayce
Clerk

PPI TECHNOLOGY SERVICES, L.P.,

Plaintiff–Appellant

v.

LIBERTY MUTUAL INSURANCE CO.

Defendant–Appellee

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before WIENER, CLEMENT, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Defendant–Appellee, Liberty Mutual Insurance Co., ("Liberty Mutual"), insured Plaintiff–Appellant, PPI Technology Services, L.P., ("PPI"). PPI was retained by several third parties to assist in planning well-drilling operations. After a well was drilled in the wrong area, PPI was sued by the third parties. PPI then sought defense and indemnification from its insurance company, Liberty Mutual. When Liberty Mutual refused, PPI brought suit claiming breach of contract, violation of the Texas Prompt Payment Statute, and breach of the duty of good faith and fair dealing. On Cross Motions for Summary Judgment, the district court found for Liberty Mutual, holding that it did not have a duty to defend PPI against two underlying lawsuits. PPI appeals the

No. 12-40189

district court's judgment, arguing that the district court erred in refusing to consider some allegations in the underlying lawsuits as "factual allegations," and in its determination that, of the "factual allegations," none alleged "property damage" from an "occurrence" as required by PPI's insurance policy with Liberty Mutual. We AFFIRM the district court's dismissal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Insurance Policy

Liberty Mutual issued a commercial general liability policy to PPI (the "Policy"). The Policy provided that Liberty Mutual would defend and indemnify PPI for claims arising out of PPI's exploration and production business operations. The Policy provides "Bodily Injury and Property Damage Liability" coverage (Coverage A) for "property damage" caused by an "occurrence." The Policy defines "property damage" as follows:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

The Policy also provides coverage for "property damage" within the "underground resources and equipment hazard" endorsement to the Policy. The Policy defines the term "underground resources and equipment hazard" to include:

> 'Property damage' to any of the following:
>
> a. Oil, gas, water or other mineral substances which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water;
>
> b. Any well, hole, formation, strata or area in or through which exploration for or production of any substance is carried on;

No. 12-40189

c. Any casing, pipe, bit, tool, pump or other drilling or well servicing machinery or equipment located beneath the surface of the earth in any such well or hole or beneath the surface of any body of water.

## B.    Underlying Lawsuit

Royal Production Company, Inc. ("Royal") is the lessor and operator of three leases located in Lake Boudreaux, Louisiana. Royal retained PPI as the representative of the working interest owners, including Blue Moon Exploration Company, L.L.C. ("Blue Moon"). PPI was allegedly to assist in well-planning and oversee the drilling of wells on the leases.

Oil and gas operations were to be conducted on three mineral leases: 18891, 18892, and 18893. The well was supposed to be drilled on Lease 18891. The well resulted in a dry hole, which was plugged and abandoned. It was later determined that the well had been drilled on Lease 18892, instead of Lease 18891. Royal filed suit against PPI in the 347th District Court of Nueces County in Cause No. 09-4086-H, *Royal Production Company, Inc. v. PPI Technology Services, L.P.* Royal sought to compel arbitration regarding its claim that PPI's negligence caused the drilling rig to be towed to the wrong location, resulting in a "dry hole" and "property damage."

The non-operator working interest owners filed suit against PPI in Cause No. 158193, *Blue Moon Exploration Company, L.L.C. et al. v. PPI Technology Services, L.P.* in the 32nd District Court of Terrebonne Parish, Louisiana. Their petition sought damages for "PPI's negligence and/or gross negligence in locating and drilling an oil and gas well in an incorrect location." Both the Royal and the Blue Moon petitions were referred to arbitration and consolidated into Case No. 70 198 Y00701 09, *Blue Moon Exploration Company, L.L.C. et al. v. Royal Production Company, Inc. et al.* We refer to the consolidated claims collectively as the "underlying lawsuits."

3

## C.     The Present Case

PPI tendered the underlying lawsuits to Liberty Mutual for defense and indemnification. Liberty Mutual denied that it owed PPI either. In a complaint filed in Texas state court, and timely removed to federal district court, PPI brought three claims against Liberty Mutual: (1) breach of insurance contract; (2) breach of section 541.060 of the Texas Insurance Code; and (3) breach of the duty of good faith and fair dealing.

PPI filed a Motion for Partial Summary Judgment seeking a judicial declaration that Liberty Mutual had a duty to defend PPI based upon the allegations in the underlying lawsuits. Liberty Mutual responded by filing a Motion for Summary Judgment, arguing it had no duty to defend or indemnify PPI because the underlying lawsuits did not contain factual allegations of "property damage" caused by an "occurrence" as required by the Policy, and that, in the alternative, policy exclusions precluded coverage.

The district court denied PPI's Motion for Partial Summary Judgment and granted Liberty Mutual's Motion for Summary Judgment, dismissing all of PPI's claims against Liberty Mutual. First, the district court declined to consider the allegations of "property damage," concluding that they were legal, rather than factual, allegations. The district court concluded that the "property damage" allegations were legal in nature because they "concern the definition and categorization of certain conduct and objects, rather than the '*facts* giving rise to the alleged actionable conduct.'" *PPI Tech. Servs., LP, v. Liberty Mut. Ins. Co.,* 2012 WL 130380, at *11 (S.D. Tex. 2012) (citing *Merchs. Fast*, 939 S.W.2d at 141 (quoting *Adamo*, 853 S.W.2d at 676)). "As mere legal assertions, these statements do not qualify as 'allegations' for purpose of the eight-corners rule." *Id.* PPI timely appealed, invoking our jurisdiction pursuant to 28 U.S.C. § 1291.

No. 12-40189

## II. STANDARD OF REVIEW

This Court reviews a grant of summary judgment de novo. *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368 (5th Cir. 2008). Summary judgment is appropriate when the pleadings and the record show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Gore Design Completions, Ltd.*, 538 F.3d at 368 (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Because federal jurisdiction is based on diversity of citizenship, the federal court looks to the substantive law of the forum state, here, Texas. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938); *Tex. Indus., Inc. v. Factory Mut. Ins. Co.,* 486 F.3d 844, 846 (5th Cir. 2007).

## III.  DISCUSSION

On appeal, PPI challenges the district court's determinations that the underlying lawsuits did not include factual allegations of "property damage" and that they did not allege an "occurrence" as required under the Policy.  Because no specific facts about the *type* or *kind* of harm were alleged, we affirm the district court's dismissal on the grounds that the underlying lawsuits did not include factual allegations of "property damage." Thus, we do not reach whether the underlying lawsuits alleged an "occurrence."

## A.    Breach of Contract

PPI argues, in its first count, that Liberty Mutual breached its contract by neglecting its duties to defend and indemnify PPI against the underlying lawsuits filed by Royal and Blue Mountain.  We conclude that Liberty Mutual has not breached its contract because it has no duty to defend.[1]  As discussed

---

[1] We do not reach the issue of whether the underlying lawsuits allege "personal and advertising injury" under Coverage B of the Policy, as PPI asserted originally.  The district court held that the allegations did not allege "personal and advertising injury," and PPI states in its briefs that it "does not challenge th[is] holding at this time."

below, the allegations in the underlying lawsuits are either purely economic, and thus not covered, or are purely legal conclusions, rather than factual allegations as required.

### *1. Duty to Defend*

a. Standards for Duty to Defend

Texas follows the eight-corners rule. *Colony Ins. Co v. Peachtree Constr., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011) (citing *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009)). The insurance company's duty to defend the insured party is determined solely on the facts alleged in the underlying lawsuit and the terms of the policy. *Id.* Under the eight-corners rule, the duty to defend is not affected by facts ascertained before suit (except to the extent they are alleged in the petition), developed during litigation, or by the ultimate outcome of the suit. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 829 (Tex. 1997) (quoting *Heyden Newport Chem. Co., v. Southern Gen. Ins. Co.*, 387 S.W.3d 22, 26 (Tex. 1965)). "Thus, the duty to defend arises only when the *facts* alleged in the [underlying lawsuit], if taken as true, would *potentially* state a cause of action falling within the terms of the policy." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (first emphasis added).

If there is a "doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (citation omitted). The insured bears the initial burden of showing that the claim against it is potentially within the policy's coverage. *Sentry Ins. v. R.J. Weber Co.,* 2 F.3d 554, 556 (5th Cir. 1993). If the insurer relies on a policy exclusion to deny

No. 12-40189

coverage, the insurer has the burden of proving the exclusion applies. *Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 723 (5th Cir. 1999).

The eight-corners rule requires courts to focus on the factual allegations contained in the underlying suits. "If a petition does not allege *facts* within the scope of coverage, an insurer is not legally required to defend a suit against its insured." *Merchs. Fast,* 939 S.W.2d at 141 (emphasis added). More specifically, "the court must focus on the *factual allegations* that show the origin of the damages rather than on the legal theories alleged." *Id.* (emphasis added). The court can neither "read facts into the pleadings" nor "imagine factual scenarios which might trigger coverage." *Gore Design Completions, Ltd., v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008) (citation omitted). "It is not the cause of action alleged that determines coverage but the *facts* giving rise to the alleged actionable conduct." *Merchs. Fast*, 939 S.W.2d at 141 (quoting *Adamo v. State Farm Lloyd's Co.*, 853 S.W.2d 673, 676 (Tex. App.—Houston [14th Dist.] 1993, writ denied)); *see also Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997) ("A court must focus on the factual allegations rather than the legal theories asserted in reviewing the underlying petition.").

b. Property Damage

At issue is whether the underlying lawsuits against PPI raise factual allegations that come within the coverage of the Policy. The parties dispute whether the allegations in the underlying lawsuits include "property damage" as covered under the Policy. The relevant allegations are as follows: Royal contends that "PPI caused the drilling rig to be towed to [] and placed upon [] the wrong location." Subsequently, towing the rig to the wrong lease resulted in "the well being drilled in the wrong location" and a "dry hole." Drilling in the wrong location caused Royal and the nonoperating working interest owners to "expend[] in excess of $4,200,000.00 for the drilling of the Well in the wrong location." The Blue Moon Plaintiffs seek $737,752.40 in delay rentals to maintain the lease

No. 12-40189

where the well was ultimately drilled. Additionally, Royal alleges that PPI caused "property damage to Royal as an owner in the property where the well was being drilled" including "physical injury to tangible property, including all resulting loss of use of the property." Finally, Royal alleges that PPI's "acts and omissions constitut[e] negligence and negligence per se."

As noted above, the Policy defines "property damage" to be: "(a) physical injury to tangible property including the loss of use of that property . . . ; or (b) loss of use of tangible property that is not physically injured." The Policy does not define the key phrases "physical injury," "loss of use," or "tangible property." Texas case law provides guidance on interpreting "tangible property." In *Lay v. Aetna Insurance Co.*, 599 S.W.2d 684 (Tex. Civ. App.— Austin 1980, writ ref'd n.r.e.), the court interpreted "tangible property" in the context of a policy whose relevant provisions are almost identical to those of the case at bar.[2] J.D. Lay was employed by J. & J. Oil Venture to determine the proper location for, and supervise the drilling of, an oil well on a lease owned by J. & J. *Id.* at 685. After J. & J. had spent $40,000, it was discovered that, due to Lay's error in reading the surveyor's stakes, the well was accidentally drilled on an adjoining tract not leased to J. & J. *Id.* The adjoining tract owner permitted J. & J. to purchase an assignment of the drilling rights on his property. *Id.* Thereafter, J. & J. brought suit against Lay to recover its losses. *Id.* Lay delivered the lawsuit to his liability insurer, Aetna, which refused to defend Lay on the grounds that the incident was not an "occurrence" and the suit was not for the recovery of "property damage" as defined by the policy. *Id.*

---

[2] In the policy in *Lay,* property damage was defined as "(1) physical injury to or destruction of tangible property which occurs during the policy period, including loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." *Lay,* 599 S.W.2d at 685.

No. 12-40189

After judgment was entered against Lay at trial, he brought suit against Aetna seeking indemnification. *Id.* The *Lay* court held that "'tangible property' is commonly understood to be property that is capable of being handled or touched." *Id.* at 686. The court further held that J. & J.'s purchase of the assignment  (to secure drilling rights to the adjoining tract) and the payment of attorney and surveyor fees were not injury to "tangible property." *Id.* Instead, the purchase of the assignment "was an economic transaction involving the exchange of money for the privilege of drilling and producing oil." *Id.* The court stated that because J. & J. alleged no cause of action for injury to "tangible property" there was no "property damage," so Aetna "had no duty to defend appellant, and, in turn, [Lay] ha[d] no right to indemnification for the amount of the judgment entered in favor of J. & J. in the previous suit." *Id.* at 686–87.

The district court relied on *Lay* for the proposition that a "claim for damages from a misplaced well did not qualify as 'property damage.'" *PPI*, 2012 WL 130389, at *14. Applying *Lay*, the district court concluded that the allegations in the underlying lawsuits that the Plaintiffs expended $4,200,000 in funds to drill the misplaced well and that the well's misplacement required a $737,752.40 delay rental are not allegations of "property damage" under the Policy. *Id.*

Setting aside those undisputedly economic damage allegations, the issue is whether the underlying lawsuits' allegations of "property damage" are factual allegations that trigger Liberty Mutual's duty to defend. PPI distinguishes *Lay* by pointing out that, unlike the plaintiff in that case, who only alleged economic damages (reimbursement for its purchase of the mineral assignment and attorney and surveying fees),  the underlying plaintiffs here specifically alleged "property damage." PPI also distinguishes *Lay* because it was not seeking a declaration of Aetna's duty to defend, but rather indemnification from liability under a judgment. *Id.* PPI is thus arguing that *aside from* the two economic

9

expenses alleged, the plaintiffs expressly alleged "property damage" by including the term in their underlying lawsuits. PPI's position is that the district court erred in refusing to consider those allegations. We disagree.

We do not consider mere use of the phrase "property damage" and parroted Policy language as sufficient factual allegations. None of the assertions of "property damage" in the underlying lawsuits are accompanied by facts illustrating specific harm or damage to tangible property. For example, there is no claim that the land was damaged, presumably because the well was drilled in the lake. The district court did find, however, that one allegation in the underlying lawsuits potentially alleged property damage—the statement that Royal suffered "property damage throughout the lease where the well was drilled." *PPI*, 2012 WL 130389, at *9. The district court read that allegation to mean that Royal was asserting that the land was harmed.[3] *Id.* However, the better reading is that Royal is simply stating that it owns the property in which the drilling occurred, making this allegation as hollow as the other cursory references to "property damage." There is no additional factual allegation about the manner of harm to the tangible property, for example, destruction from penetration or scorching from a blowout or fire.

A case where the court found that the alleged facts were sufficient to allege a claim for "property damage" provides a comparison. Camaley Energy Company, Inc. ("Camaley") was sued in Texas state court concerning a well they were allegedly responsible for drilling and operating. *Mid-Continent Cas. Co. v. Camaley Energy Co.,* 364 F.Supp.2d 600, 602 (N.D. Tex. 2005). The underlying lawsuit alleged that Camaley had failed to properly evaluate the location of the well, and that this failure resulted in the lease line being crossed, thus constructively evicting the plaintiffs from their land. *Id.* Mid-Continent had

---

[3] The district court then held that any damage from the drilling would not be an "occurrence" under of the Policy.

issued Camaley a Commercial General Liability Policy, whose "property damage" coverage is similar to that in the case at bar and includes both a "physical injury" and a "loss of use" prong, as does the Policy at bar.[4]  *Id.* at 604–05.

Camaley requested defense and indemnification from Mid-Continent. *Id.* at 602. Mid-Continent filed a Motion for Summary Judgment, seeking a determination that it did not have a duty to defend or indemnify Camaley. *Id.* Mid-Continent claimed, among other things, that the facts in the underlying lawsuit did not allege claims for covered "property damage." *Id.* at 603–04. Mid-Continent argued, just as Liberty Mutual does, that "despite the [] Plaintiffs' use of the term 'property damage' in their petition, there are no factual allegations to support claims for actual damage to or loss of tangible property." *Id.* at 605. The court ultimately held that the specific factual allegation of being constructively evicted alleged "physical damage" through the "loss of use" prong. *Id.* at 605–06.

"Loss of use" is not seriously raised in this case. While the underlying lawsuits here do contain the phrase "loss of use," no specific use or loss thereof is mentioned and PPI does not substantially raise "loss of use" in its briefs, so injury to "tangible property" is its only available avenue. Compared to *Camaley* above, the underlying plaintiffs likely could not allege "constructive eviction" from any of the leases because delay rentals preserved the leases.

More importantly, the *Camaley* court found that the underlying lawsuit, despite its inclusion of the phrase "property damage," "clearly does not allege physical injury to tangible property." *Id.* Just as in *Camaley*, where the

---

[4] The policy in *Camaley* defined property damage as "physical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of tangible property that is not physically injured." *Mid-Continent*, 364 F. Supp. 2d at 604–05.

underlying lawsuit's mere allegation of "property damage" without factual support insufficiently alleged injury to tangible property, the allegations of "property damage" in the underlying lawsuits here are insufficient.

PPI makes Liberty Mutual's argument for it when it states in its reply brief that "there could have been damage to the 'well pad'" and "there could have been other property (such as other well-related equipment) which was damaged." PPI itself is providing clear examples of what a factual allegation of "property damage" would be. But those hypothetical harms are not alleged, and thus cannot be considered. Ultimately, under Texas law, where "a cause of action's label does not determine whether an insurer has a duty to defend," "property damage" is more appropriately a label or legal theory and not a factual allegation. *See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 135 (Tex. 2010).

Finally, as a policy matter, PPI's position would permit plaintiffs to trigger coverage in almost any case by making general assertions that copy the language of the Policy statement. That consequence should be avoided.

PPI, acknowledging that the allegations of "property damage" may be conclusory, insists that they are nonetheless allegations that trigger coverage. As support for this assertion, PPI offers several cases where the court found sufficient factual allegations of "property damage" in the underlying complaint. The cases PPI offers, however, contain specific factual allegations that demonstrate to the court the type of harm the underlying plaintiffs suffered. The "property damage" clause in the policy at issue in *Admiral Insurance Co. v. Little Big Inch Pipeline Co.*, 523 F.Supp.2d 524 (W.D. Tex. 2007) is the same as the clause in the Policy at issue here. The *Little Big Inch* plaintiffs alleged that damage to land from dug-up driveways, slabs, and foundation, and left-behind debris caused a diminution in value to their property. *Id.* at 538. Despite PPI's reliance on *Little Big Inch*, the case is easily distinguished from the case at bar,

and in fact, better supports Liberty Mutual's position. Whereas the complaint in *Little Big Inch* contained specific factual allegations about the type of harm sustained—diminution in value to surrounding property due to dug-up gas lines, driveways, slabs, and foundations, and abandoned debris—the underlying lawsuits here make general allegations of "property damage" without specifying what harm or damage the property has suffered.

Finally, PPI objects that the district court did not construe the allegations in PPI's favor, as required. Where there is "doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in [the] insured's favor." *Merchs. Fast*, 939 S.W.2d at 141 (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)). PPI's position is that the district court erred in not construing what PPI considers the "property damage" allegations in its favor. This position is incorrect. The Court is only to construe allegations favorably to the insured where there is doubt as to whether the allegations come within the policy. Here, the district court instead found that the legal assertions were not *factual* allegations that had to be construed at all. Thus, because the allegations are undoubtedly insufficient, there is nothing to construe in PPI's favor.

Because we hold that there was no factual allegation of property damage, we do not reach the issue of whether any damage was caused by "an occurrence." Nor do we reach the Policy Exclusions.

### c. Underground Resources and Equipment Hazard

By its terms, the "underground resources" coverage is a specific type of "property damage." By not alleging any "property damage" generally, the underlying lawsuits fail to allege damage to "underground resources."

### *2. Duty to Indemnify*

The duty-to-indemnify issue has become moot since the time of the district court's decision. After the district court's decision, the arbitration panel ruled that PPI had no liability to the underlying plaintiffs. Lake Boudreaux SL 18891 #1 Well Arbitration Proceeding, 7 (Jan. 23, 2012) (final award). Because there was no award, there is nothing for Liberty Mutual to indemnify. Both parties acknowledge that the duty-to-indemnify issue is now moot.

### B.    Texas Insurance Code: Prompt Payment of Claims Act

Because the district court ruled that Liberty Mutual had no duty to defend PPI, and a duty to indemnify had not yet arisen, the district court concluded that Liberty Mutual had not violated the Prompt Payment of Claims Act, Texas Insurnace Code § 542.060. *PPI*, 2012 WL 130389, at *18. To prevail under the Prompt Payment of Claims Act, the plaintiff must establish that there is a claim under the insurance policy for which the insurer is liable. If the policy does not provide coverage for the claims in the underlying lawsuits, the insurer is not liable under the statute. *See Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005). Because we affirm the breach of contract claim's dismissal, we affirm the Texas Insurance Code claim's dismissal as well.

### C.    Breach of Duty of Good Faith and Fair Dealing

The district court dismissed PPI's action for breach of the duty of good faith and fair dealing. The Texas Supreme Court has stated that there "can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995). Therefore, because we affirm the district court's dismissal of the breach of contract claim, we also affirm its dismissal of the breach of duty of good faith and fair dealing claim.

No. 12-40189

## IV.  CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of PPI's breach of contract, breach of the Texas Insurance Code, and breach of the duty of good faith and fair dealing claims.

AFFIRMED.